UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:18-cv-460-JMH |
| v. | ) ) | **MEMORANDUM OPINION** |
| KENNETH HATTON and LORA HATTON, | ) ) ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*

Defendants Kenneth and Lora Hatton move to amend or correct their Answer and Counterclaim against Plaintiff Nationwide Mutual Fire Insurance Company. [DE 14]. The Hattons seek to add The Roark Agency, LLC, ("Roark" or "Agency") to the action as a third-party plaintiff, claiming that Roark is an indispensable party. [See DE 14 at 1, Pg ID 105]. Contemporaneously, the Hattons move to dismiss the matter for lack of subject matter jurisdiction because adding Roark as a third-party plaintiff will destroy complete diversity of citizenship between the parties. [DE 15]. Alternatively, notwithstanding the Court's decision on adding Roark as a party, the Hattons argue that the Court should decline to exercise jurisdiction over this matter because they claim Nationwide's lawsuit constitutes procedural fencing to gain jurisdiction in federal court and that the relevant considerations counsel against the exercise of federal jurisdiction in this

1

matter. [DE 15 at 4-7, Pg ID 115-18]. Thus, that Hattons assert that this federal case should be dismissed and heard in state court. [*Id.*].

In response, Nationwide asserts that the Hattons' Motions are nothing more than attempts to destroy federal diversity jurisdiction. [DE 18 at 2, Pg ID 126]. In support of this contention, Nationwide argues that Roark is not an indispensable party, that if Roark is joined, it should be joined as a third-party defendant, and that this Court should exercise jurisdiction in this matter under the Declaratory Judgment Act. [DE 18]. The Hattons tendered a consolidated reply, making this matter ripe for review. [DE 19].

Here, the Hattons have failed to establish that the Roark Agency is an indispensable party, so the Hattons' Motion to Correct or Amend the Answer to Complaint and Counterclaim [DE 14] is **DENIED**. But because the relevant factors and considerations weigh against exercising federal jurisdiction in this matter and because the state court is a more practical and efficient forum for resolution of this action, the Hattons' Motion to Dismiss [DE 15] is **GRANTED IN PART** and **DENIED IN PART** and this action is **DISMISSED WITHOUT PREJUDICE**.

## I.  Procedural and Factual Background

On or around October 30, 2017, the Defendants, Kenneth and Lora Hatton, applied for a dwelling insurance policy to insure real property they owned at 121 East High Street in Mount Sterling, Kentucky.  [DE 1-2].  On December 8, 2017, the insured property was damaged by a fire.  As a result, the Hattons made a claim for coverage under the Nationwide policy.

Subsequently, at Nationwide's request, the Hattons submitted separate examinations under oath ("EUOs") on March 15, 2018.  [*See* DE 18-1; DE 18-2].  Then, on July 19, 2018, counsel for Nationwide sent a letter to counsel for the Hattons indicating that Nationwide believed that coverage was unavailable to the Hattons due to misrepresentations made on the insurance application.  [DE 15-1 at 1, Pg ID 120].  Additionally, the letter indicated that in lieu of immediately denying coverage, Nationwide had decided to file a declaratory judgment action to obtain a declaration of its rights and liabilities before proceeding.  [*Id.*].

On the same day that it sent the letter, Nationwide filed this declaratory judgment action in federal court.  [*See* DE 1]. According to Nationwide, the Hattons made material misrepresentations when applying for the Nationwide policy, which entitles Nationwide to deny coverage pursuant to the terms of the insurance policy and K.R.S. § 304.14-110.  [DE 1 at 4-6, Pg ID 4-6].

In their Answer, the Hattons filed a counterclaim for breach of contract against Nationwide. [DE 9]. Additionally, the Hattons argue that their EUO testimony is inconclusive and that material issues of genuine fact exist pertaining to whether misrepresentations were made during the application process and whether the EUOs are relevant evidence. [DE 19 at 1-8, Pg Id 482-89]. Additionally, the Hattons assert that an employee of the Roark Agency completed the application for insurance on the Hattons' behalf. [DE 15]. As such, the Hattons argue that the Agency is an indispensable party in this matter because the Agency is responsible for any material misrepresentations contained in the insurance application. [*Id.*].

As a result, the Hattons move for leave to amend their Answer to assert counterclaims for breach of contract and negligence against the Roark Agency as a third-party plaintiff and a new counterclaim of estoppel against Nationwide. [DE 14]. The Hattons simultaneously move to dismiss this action for lack of subject matter jurisdiction. [DE 15]. Nationwide filed a combined response [DE 18], and the Hattons tendered a combined reply [DE 19], making this matter ripe for review.

### III. Analysis

Federal courts are courts of limited jurisdiction and must have subject matter jurisdiction to hear a case. In a diversity action like this one, the Court must apply the substantive law of

the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). Thus, "where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945).

## A. Motion for Leave to Amend and Addition of an Indispensable Party

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Courts have construed Rule 15 liberally." *Schneidt v. J.P. Morgan Chase Bank, N.A.*, No. 06-CV-423-JMH, 2007 WL 4328034, at *1 (E.D. Ky. Dec. 10, 2007) (citing *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003)). "Leave to file an amended complaint . . . should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 1982 (1962)).

Here, the Hattons argue that Roark is an indispensable[1] party that must be joined as a third-party plaintiff in this matter. Additionally, they argue that the joinder of Roark as a third-party plaintiff destroys complete diversity of citizenship among the parties and divests the Court of subject matter jurisdiction. But the Hattons have failed to meet their burden to establish that Roark is an indispensable party and, as a result, their Motion to Amend or Correct the Answer to Complaint is denied.

**(1)  Whether the Roark Agency is an Indispensable Party**

**(a)  Applicable Standard for Mandatory Joinder Under Rule 19**

Rule 19 of the Federal Rules of Civil Procedure provides a three-step analysis to determine whether a party must be joined in an action. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001); Fed. R. Civ. P. 19.  First, the Court must determine if a party that is not joined is a necessary party that should be joined if possible, based on the requirements outlined in Rule 19(a). *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763–64 (6th Cir. 1999); Fed. R. Civ. P. 19(a).  Second, if deemed a necessary party, the Court must determine whether the party is subject to personal jurisdiction and can be joined without

---

[1] Rule 19 uses the term "required party" but the parties use the term "necessary" and "indispensable."  For the purpose of this Memorandum Opinion and Order, there is no substantive difference between a "required," "indispensable," or "necessary" party in the mandatory joinder analysis.

eliminating the basis for subject matter jurisdiction. *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345-46 (6th Cir. 1993); Fed. R. Civ. P. 19(a). Third, and finally, the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see also Soberay Mach. & Equip. Co.*, 181 F.3d at 764. Rule 19(b) provides fours factors to be considered at the third step of the analysis. See Fed. R. Civ. P. 19(b)(1)-(4).

For a party to be deemed necessary or required, the party must meet at least one of the requirements included in Rule 19(a)(1). Thus, the Roark Agency is a required party if:

(A) in [the Agency's] absence, the court cannot accord complete relief among existing parties; or

(B) [the Agency] claims an interest relating to the subject of the action and is so situated that disposing of the action in [the Agency's] absence may:

(i) as a practical matter impair or impede [the Agency's] ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Here, the Hattons rely heavily on the reasoning of *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190 (S.D. Fla. 1989) to support their contention that the Roark Agency is an

indispensable party.[2]  The court in *High Croft*[3] was faced with a nearly identical issue where the insurer filed a declaratory judgment action in federal court after denying coverage of the insured's claim.  *High Croft* acknowledged the reverse alignment that was created by the insurer filing the declaratory judgment action against the claimant and ultimately held that the insurance agent who assisted the insurer in issuing the policy was an indispensable third-party plaintiff. *See High Croft*, 714 F. Supp. at 1192-93.

But *High Croft* is not dispositive here.  The opinions of other federal district courts, while persuasive, are not binding authority that this Court must follow.  *See, e.g.*, *Beshear v. Volkswagen Grp. Of Am., Inc.*, No. 16-CV-27-GFVT, 2016 WL 3040492, at *2 (E.D. Ky. May 25, 2016); *Cronin v. Ky. Horse Park Found., Inc.*, No. 5:15-CV-197-KKC, 2016 WL 1633294, at *1-2 (E.D. Ky. Apr. 22, 2016).  Whether this Court decides to follow persuasive authority turns on: "(1) 'whether the persuasive authorities employ logical reasoning'; (2) their internal consistency; (3) and

---

[2]  Much of the Hattons' substantive argument in support of compulsory joinder of the Roark Agency is contained in the Defendants' Motion to Dismiss.  [DE 15].

[3]  The Hattons refer to *Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190 (S.D. Fla. 1989), in the short form as "*Casualty Indemnity*."  To avoid ambiguity, however, the Court will refer to this case in the short form as "*High Croft*" since Casualty Indemnity appears to be a common party name in insurance cases and may be confused with other case names.

'whether they are consistent with a plain and sensible reading of any applicable . . . statutes (taking into account, when necessary and appropriate to clarify any ambiguity, the legislative history and intent).'" *Cronin*, 2016 WL 1623294 at *2 (quoting *Smith v. Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009)).

In this case, the legal analysis in *High Croft* does little to assist the Court in determining whether Roark is an indispensable or required party that must be joined. As was previously discussed, under Sixth Circuit precedent, the first consideration in the Rule 19 analysis is whether a party is *necessary pursuant to the requirements in Rule 19(a)(1)*. *Soberay Mach. & Equip. Co.*, 181 F.3d at, 763–64; *see also Daily Underwriters of Am., Inc. v. Caudill*, No. 7:18-CV-034-CHB, 2018 WL 6594542, at *2 (E.D. Ky. Dec. 14, 2018) (applying Rule 19(a)(1) to determine if a party is a necessary party). But in *High Croft*, the court's analysis focused exclusively on the *Rule 19(b) factors* that are relevant at the third stage of the Rule 19 mandatory joinder analysis. *See High Croft*, 714 F. Supp. at 1192; Fed. R. Civ. P. 19(b)(1)-(4). It appears that the High Croft court assumed that the agent was a required party and did not engage in the Rule 19(a) analysis or failed to explain its finding pertaining to whether the agent was a required party under Rule 19(a).

But Rule 19(b) is contingent upon a finding that a party is a necessary party in Rule 19(a), stating: "*If a person who is*

9

*required to be joined if feasible cannot be joined*, the court must determine whether . . . the action should proceed among the existing parties or be dismissed." Fed. R. Civ. P. 19(b) (emphasis added).  Thus, a court must necessarily determine whether a party is required to be joined under Rule 19(a)(1) before considering the factors in Rule 19(b) to determine if the action should continue with the existing parties or be dismissed.

Initially, the question for the Court in this case is whether Roark is a required party under Rule 19(a)(1).  If Roark is found to be a required party, then the Court must proceed to the next two steps in the Rule 19 analysis.  *See PaineWebber, Inc.*, 276 F.3d at 200.  Ultimately, the initial burden to show that a missing party is indispensable is on the moving party.  *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972).

**(b)   Can the Court Accord Complete Relief Among the Existing Parties?**

First, the Hattons have not demonstrated that the Court cannot accord complete relief among the existing parties under Rule 19(a)(1)(A).  K.R.S. § 304.14.110 provides that fraudulent or material misrepresentations made in an application for insurance coverage will prevent recovery under the policy.  Additionally, Kentucky courts have acknowledged that, "a material misrepresentation in an application for an insurance policy, though innocently made, will avoid" the policy.  *See, e.g.*, *Metro.*

*Life Ins. Co. v. Tannenbaum*, 240 S.W.2d 566, 569 (Ky. 1951); *Prudential Ins. Co. of Am. v. Lampley*, 180 S.W.2d 399, 401 (Ky. 1944); *Baker v. Ky. Farm Bureau Mut. Ins. Co.*, No. 2017-CA-118, 2018 WL 3814763, at *3 (Ky. Ct. App. Aug. 10, 2018).[4] In the context of an insurance contract or application, "a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of [] insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated." *Tannenbaum*, 240 S.W.2d at 569.

As such, the primary question before the Court in this declaratory judgment action is whether a material misrepresentation was made on the insurance application that would entitle Nationwide to deny coverage under the policy and, alternatively, whether the denial of coverage constituted bad faith. Here, while there are factual issues pertaining to the relevance of the Hattons statements in the EUOs and the culpability of Roark for any misrepresentations made on the insurance

---

[4] The Court acknowledges Kentucky Supreme Court Rule 76.28(4)(c), which states that unpublished opinions are not to be cited or used as precedent in the courts of Kentucky. Still, the United States Court of Appeals for the Sixth Circuit "permits citation of any unpublished opinion, order, judgment, or other written disposition." 6 Cir. R. 32.1(a). Additionally, there is ample published support for the proposition in text. The recent unpublished disposition of the Kentucky Court of Appeals simply indicates that this legal principle is still commonly relied upon by the courts of Kentucky.

application, the Roark Agency need not be a party to the action to allow the Court to address these factual issues, declare the rights and obligations of Nationwide, and address the Hattons' counterclaim by considering whether a material misrepresentation was made when the Hattons applied for insurance coverage with Nationwide that will prevent Nationwide from denying coverage.

Of course, the factual circumstances surrounding Roark's assistance with the acquisition of the insurance policy may be relevant in this matter.  For instance, employees of the Roark Agency may be important witnesses in this matter and some of the factual circumstances may be intertwined.  Still, while the joinder of Roark may be convenient and more efficient, the fact that Roark assisted with the acquisition of the insurance policy does not *require* that Roark be joined in this action.

Still, the possibility of future litigation against a potential party does not mandate joinder; Rule 19(a)(1)(A) is concerned only with existing parties.  *Sch. Dist. of Pontiac v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009).  The Hattons *may* have a claim for breach of contract or negligence against Roark and Nationwide *may* have a right of indemnity against Roark.  Still, this potential for future litigation does not mean that this Court cannot provide complete relief among the existing parties on the discrete issue of coverage under the insurance policy.  The fact that Roark may have some

liability in this matter does not necessitate joinder. *See Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 44 (2012) (holding that a party's status as a joint tortfeasor does not make the party an indispensable party).

Here, the counterclaims against Roark contained in the proposed amended answer appear to be contingent upon the outcome of the coverage dispute. For example, the Hattons' proposed breach of contract counterclaim against Roark states, "In the event Nationwide is found not to owe coverage to the Defendants under the Policy, the Agency has breached their contract with the Defendants." [DE 14-1 at 3, Pg ID 109]. Similarly, the Hattons' proposed negligence counterclaim contains similar language that is contingent upon the outcome in this lawsuit. [*Id.*]. In this action, the discrete relief requested by Nationwide, a declaration of Nationwide's rights and liabilities under the insurance policy, may be resolved without Roark being added as a party to this action.

In sum, the Court may declare Nationwide's obligations under the policy and determine whether Nationwide breached the insurance policy without the joinder of the Roark Agency. Thus, the Hattons have failed to demonstrate that complete relief cannot be granted without the joinder of Roark in this matter.

**(c) Will Disposing of the Action in Roark's Absence Impair the Agency's Ability to Protect its Interest or Subject an Existing Party to Incurring Double, Multiple, or Inconsistent Obligations?**

Second, the Hattons have similarly failed to demonstrate that the Roark Agency claims an interest that is so situated that disposing of the action in the agency's absence may impair or impede the Roark's ability to protect the interest or may leave an existing party subject to incurring double, multiple, or inconsistent obligations.

Here, the Hattons' entire argument pertaining to the possibility for inconsistent judgments relies on direct citations from the *High Croft* decision. [*See* DE 15 at 3-4, Pg ID 114-15]. The Hattons' argument seems to be that the *High Croft* court got it right in a similar case and, as a result, this Court should also find that Roark is an indispensable party due to the potential for inconsistent judgments. [*See id.*]. Frankly, that is not sufficient to demonstrate that Roark is an indispensable party.

To meet their burden of demonstrating that Roark is an indispensable party, the Hattons must do more than provide quotations from a single persuasive case. While there appear to be legitimate concerns about the potential for parallel litigation and inconsistent judgments in this matter, the Court cannot determine whether Roark is an indispensable party without more flesh on the bones of the Hattons' argument. Here, the Hattons

have cited no binding authority to support their argument that Roark is an indispensable party due to the potential for inconsistent obligations. Furthermore, the Hattons have provided few facts specific to this case that demonstrate that Roark's ability to defend its interest will be impaired or that one of the existing parties will be subjected to multiple or inconsistent obligations as a result of this action proceeding in federal court. As such, the Hattons have failed to demonstrate that Roark must be joined in this action pursuant to Rule 19(a)(1)(B).

**(d)  Conclusion on Adding the Roark Agency as an Indispensable Party**

In conclusion, the Hattons have failed to demonstrate that the Court may not accord complete relief in this declaratory judgment action among the existing parties without the joinder of the Roark Agency. *See* Fed. R. Civ. P. 19(a)(1)(A). Additionally, the Hattons have failed to demonstrate that the agency has an interest in the action that is so situated that disposing of the action in the Roark's absence will impede the agency from protecting its interests or that will lead to a substantial risk of the agency incurring double, multiple, or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B). As a result, the Roark Agency is not a required party pursuant to Rule 19(a)(1) and this action may proceed without joinder of the Agency.

Lastly, having found that Roark is not a required party, the Court need not consider the second and third steps in the Rule 19 analysis. The second and third steps are contingent upon the Court concluding that the Agency is a required party in this action. *See Soberay Mach. & Equip. Co.*, 181 F.3d at 764; *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d at 1345-46; Fed. R. Civ. P. 19. As a result, seeing as the Roark Agency is not an indispensable party that must be joined in this matter and that joinder of Roark would destroy diversity of citizenship, the Hattons' Motion to Amend their Answer and Counterclaim is denied.

## B.     Exercise of Jurisdiction Pursuant to the Declaratory Judgment Act

Alternatively, even if the Roark Agency is not an indispensable party, the Hattons still urge the Court to dismiss this declaratory judgment action. The Hattons argue that Nationwide's declaratory judgment action in federal court constitutes procedural fencing and that, even if this Court has subject matter jurisdiction, the matter is best litigated in state court. Ultimately, because the relevant factors and considerations weigh against the exercise of federal jurisdiction in this case for the reasons that follow, the action is dismissed.

### (1)    The Declaratory Judgment Act and Federal Jurisdiction

The Declaratory Judgment Act provides that,

> In a case of actual controversy within its
> jurisdiction . . . any court of the United States, upon

the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). As is the case here, the Act allows for prospective defendants to establish their nonliability. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).

Still, while the Declaratory Judgment Act enlarges the range or remedies available in federal court, the Act does not provide an independent basis for subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). As such, an action brought under the Declaratory Judgment Act must invoke an independent basis for federal jurisdiction.

Here, this Court has subject matter jurisdiction based on diversity jurisdiction. Traditionally, the justification for federal subject matter jurisdiction based on diversity of citizenship is to "open[] the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010); *see also* 13E Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3601, p. 15 (3d ed. 2009). Diversity jurisdiction is rooted in Section 2, Clause I of Article III of the United States Constitution, which provides that the

judicial power of the United States extends to cases involving "Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. Congress has effectuated this provision by statute in 28 U.S.C. § 1332, stating that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332.

## (2) Discretion to Exercise Federal Jurisdiction in Declaratory Judgment Actions

Still, notwithstanding subject matter jurisdiction based on diversity of citizenship, federal courts have discretion pertaining to whether to exercise jurisdiction in declaratory judgment actions. The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton*, 515 U.S. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). As a result, and particularly in cases involving insurance disputes such as this one, some federal courts have declined to exercise federal jurisdiction in cases brought under the Declaratory Judgment Act. *See, e.g.*, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942); *Motorists Mut. Ins. Co. v. Thacker Memorial Inc.*, 679 F. Supp. 2d 802 (E.D. Ky. 2010).

Here, the Hattons' normative argument, that regardless of the Court's subject matter jurisdiction this matter should be heard in state court as opposed to federal court, requires the Court to engage in a complex analysis concerning basic principles of federal jurisdiction and federalism generally. This is especially true where subject matter jurisdiction is based on diversity of citizenship and the substantive rule of decision is based on application of state law.

The United States Court of Appeals for the Sixth Circuit has provided guidance to district courts deciding whether to exercise discretionary jurisdiction under the Declaratory Judgment Act, stating that "[i]n determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy Assocs. v. Mich. Public Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). Furthermore, in insurance cases, like this one, the Court of Appeals has said that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986); *see*

*also Travelers Indem. Co. v. Bowling Green Prof. Assocs., PLC*, 495
F.3d 266, 273 (6th Cir. 2007).

But here, the Court is unaware of any parallel or previously
filed state court proceeding. Nationwide chose to pursue a
declaration of its rights and obligations under the insurance
policy in federal court. While courts may decline to exercise
jurisdiction under the Declaratory Judgment Act, "there is no *per
se* rule to prevent district courts from exercising jurisdiction
over declaratory judgment actions related to insurance
relationships and relevant exceptions to coverage." *Sec. Nat'l
Ins. Co. v. Jamestown Union Bancshares, Inc.*, No. 2:18-cv-025,
2018 WL 6167946, at *3 (M.D. Tenn. Nov. 28, 2018)
(full-text publication pending) (citing *Scottsdale Ins. Co. v.
Roumph*, 211 F.3d 964, 967 (6th Cir. 2000)).

Accordingly, the Court must engage in a detailed, fact-
specific inquiry to determine whether to exercise jurisdiction
over this declaratory judgment action. *See id.* at *4. To guide
this analysis, the Court must consider: (1) whether the judgment
would settle the controversy; (2) whether the declaratory judgment
action would serve a useful purpose in clarifying the legal
relations at issue; (3) whether the declaratory remedy is merely
being used for "procedural fencing" or "to provide an arena for a
race for res judicata"; (4) whether the use of a declaratory
judgment action would increase the friction between our federal

and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004); *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court will consider each of the factors in turn.

### (a) The First Two Factors: Settling the Controversy and Clarifying the Legal Relations at Issue

The first two factors are closely related and are often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). As multiple district courts have acknowledged, the Sixth Circuit has been inconsistent regarding the proper interpretation of the first factor, whether the judgment will settle the controversy. *See, e.g.*, *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 786-89 (E.D. Ky. 2008); *Cincinatti Ins. Co. v. Orten*, No. 3:17-CV-036, 2017 WL 49118594, at *4-5 (M.D. Tenn. Oct. 30, 2017).[5] Here, for the reasons that follow, the first factor weighs against the exercise of jurisdiction in federal court but the second factor weighs in favor of the exercise of federal jurisdiction.

---

[5] It is unclear if the spelling of "Cincinatti" in the case name is the correct of the name of the insurance company that was a party to the action or is an error. Regardless, the case name in the citation here is identical to the spelling in the original.

The Sixth Circuit has been unclear on whether the first factor means that the declaratory judgment action must settle the ultimate controversy or just settle the immediate controversy before the district court.

One line of cases has held that the declaratory judgment action must only settle the immediate controversy before the district court, not the underlying controversy itself. *See Scottsdale*, 513 F.3d at 555-56; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986). This line of cases seems to be justified by a policy preference that favors allowing a party to determine its legal obligations as quickly as possible. *See Scottsdale*, 513 F.3d at 555.

In this case, the declaratory judgment action in federal court will settle the immediate dispute regarding the rights and obligations of Nationwide under the policy and whether Nationwide breached the policy by denying coverage. As was previously discussed, Nationwide filed this action in federal court to seek a declaration of its rights and obligations under the insurance policy. Through their estoppel claim and the evidentiary process, the Hattons may assert that it was Roark that was responsible for any misrepresentations during the insurance application process, assuming there were misrepresentations made. As such, a judgment

in this Court will clarify the immediate legal issue between the present parties pertaining to insurance coverage under the Nationwide policy.

In contrast, a second line of cases within the Sixth Circuit has reached the conclusion that the declaratory action in the district court must settle the ultimate controversy, not just the immediate controversy between the parties before the Court. *See Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007); *United States Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564-65 (6th Cir. 2006); *Bituminous Cas. Corp.*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. This second line of cases is justified by policy considerations that favor consolidating litigation into one court. *See Scottsdale*, 513 F.3d at 555.

Here, it is unclear whether a judgment will settle the ultimate conflict between the parties. For instance, if it is determined that misrepresentations were made during the application process, then there is an issue of what responsibility the Roark Agency may have for those misrepresentations. As such, in order to bring claims for negligence or breach of contract against Roark, the Hattons will have to initiate related litigation in state court.

On the other hand, if a judgment in this action determines that Nationwide is obligated to pay under the policy, then it is possible that Nationwide will pursue a right of indemnity or other legal recourse against the Roark Agency if it had some responsibility for the material misrepresentations.

Lastly, the third potential outcome is that this litigation ends the ultimate controversy altogether. For instance, hypothetically, the outcome of this declaratory judgment action may be that there were no material misrepresentations made on the insurance application and that Nationwide is required to cover the Hattons under the insurance policy.

Still, the fact remains that there is at least a possibility that a judgment in this matter will not result in resolution of the underlying controversy. As a result, there is a very real chance that further litigation will be necessary in state court to settle the ultimate controversy here.

The inconsistency within the Sixth Circuit makes it difficult for the Court to determine whether the first factor weighs in favor of jurisdiction in this matter. If the first line of authority is correct, that the primary consideration is whether a judgment in this action must only settle the immediate controversy before the district court then, in this case, the first factor weighs in favor of exercising federal jurisdiction. Alternatively, if the second line of authority is correct, that the declaratory action in the

district court must settle the ultimate controversy to support the exercise of federal jurisdiction, then the first factor weighs against the exercise of federal jurisdiction.

Similarly, the Sixth Circuit has provided inconsistent guidance on the proper application of the second factor, whether the declaratory judgment action will serve a useful purpose in clarifying the legal relations at issue. *See Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 787. In *Scottsdale*, the Sixth Circuit concluded that to clarify the legal relations at issue, a declaratory judgment must only provide a final resolution of the discrete issue presented before the district court. Scottsdale, 513 F.3d at 557. Alternatively, in *Bowling Green Professional Association*[6] and *Bituminous*, the Sixth Circuit noted that the second factor is satisfied when the declaratory judgment will clarify the legal relations between all parties in the underlying state court action.

Previously, in *Grange Mutual*, another judge in this judicial district acknowledged that the Sixth Circuit had reached inconsistent results in two cases that were similar to this case.

---

[6] Most courts refer to *Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007), as *"Travelers Indemnity"* in short form. But here, the Court will refer to this case in the short form as *"Bowling Green Professional Association"* in text and *"Bowling Green Prof'l Assoc."* in citations since Travelers Indemnity is a common party name that may be confused with other cases.

*See Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 786-87 (*comparing Bowling Green Prof'l Assoc.*, 495 F.3d at 273-74, *with Scottsdale*, 513 F.3d at 570). But in *Bowling Green Professional Association* and *Scottsdale*, there were underlying state court actions. Here, the key distinction with these cases and others is that the Court is unaware of any underlying state court action. *See Bowling Green Prof'l Assoc.*, 495 F.3d at 272; *Bituminous Cas. Corp.*, 373 F.3d at 814.

Still, the court in *Grange Mutual* also astutely concluded that the historical background for the two factors indicates that the first and second factor are intended to address two distinct issues. *See Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 788. Thus, the historical background indicates that the first factor "is meant to measure whether the action will terminate or settle the ultimate controversy," while the second factor "is meant measure the usefulness of the action in clarifying discrete legal relations at issue." *Id.* Put another way, the first factor "asks whether the federal court can decide all the issues and end all litigation amongst all the parties," while the second factor "asks whether the federal court's decision could provide a complete resolution to at least one issue, deciding the rights and obligations and completely ending the litigation between at least two parties." *Id.* Admittedly, this approach explains the split of authority

within the Sixth Circuit in a way "that is not wholly consistent with either of the two lines of precedent." *Id*.

Still, the approach used to resolve the conflict of authority in *Grange Mutual* has logical appeal and seems to be the best resolution based on the current state of the law. As such, adopting the same approach that the court employed in *Grange Mutual* here, the first factor weighs against the exercise of federal jurisdiction because it is unclear whether a judgment in this action will settle the ultimate controversy and there is a very real possibility that additional litigation will be necessary in state court, notwithstanding the judgment in the federal declaratory action. But the second factor weighs in favor of the exercise of federal jurisdiction because a decision on the rights and obligations of Nationwide under the insurance policy will settle the discrete issue between the two parties in this action pertaining to coverage under the Nationwide policy.

**(b) Factor Three: Procedural Fencing or a Race for Res Judicata**

The third factor seeks to prevent litigants from using declaratory judgment actions to gain a favorable forum in the federal courts. The Hattons cite numerous cases to support their contention that procedural fencing occurred in this case, claiming that if they had filed a claim for coverage in state court against Nationwide and Roark that Nationwide would have been unable to

remove the action to federal court due to a lack of complete diversity. Here, the Hattons argue that "the concern is that the declaratory judgment action not be used to allow the 'natural defendant' to preempt the 'natural plaintiff's' choice of forum and that the action not be used to force the natural plaintiff to race to the courthouse rather than come to the negotiation table." *Liberty Mut. Fire Ins. Co. v. Bohms*, No. 1:10-CV-1158, 2011 WL 3268608, at *1 (W.D. Mich. July 29, 2011) (citing *High Croft*, 714 F. Supp. at 1193; *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 830 (E.D. Va. 2001)).

Here, while "there is no *per se* rule to prevent district courts from exercising jurisdiction over declaratory judgment actions related to insurance relationships and relevant exceptions to coverage," *Sec. Nat'l Ins. Co.*, 2018 WL 6167946, at *3, the timing of Nationwide's filing of the declaratory judgment action is unusual, indicating that Nationwide made a strategic decision to preempt the Hattons choice of forum and suggesting that procedural fencing occurred. As such, the third factor weighs against exercising federal jurisdiction in this matter.

First, the Hattons are correct that if they had filed a proper action in state court as the plaintiff against Nationwide and Roark as defendants, that Roark's presence in the action would destroy complete diversity of citizenship. Nationwide argues that Roark would only be added to the state court action to prevent the case

from being removed to federal court, amounting to fraudulent joinder. But a fraudulent joinder analysis is not relevant here because this case was not removed to federal court but was filed in federal court by Nationwide in the first instance.[7] Ultimately, if the Hattons had filed the action in state court in the first instance, and asserted claims against Nationwide and Roark, removal would be unavailable to Nationwide barring fraudulent joinder of Roark. Thus, it appears that Nationwide filed this action in federal court for the purpose of procedural fencing.

Second, while an insurer filing an action for a declaration of its rights in federal court is not unusual, courts have found that procedural irregularities with the filing of declaratory actions can indicate that an action was filed for the purpose of procedural fencing or forum shopping. For instance, in *Bohms*, the Defendant served the insurer with a legally required civil remedy notice to give the insurance company notice of a potential litigant's forthcoming bad faith lawsuit as required by Florida law. 2011 WL 3268608, at *1. Florida law required that the insurance company be provided sixty days' notice before a bad faith lawsuit could be filed. *Id.* On the fifty-ninth day after notice

---

[7] Here, the Court cannot engage in a speculative fraudulent joinder analysis because this case was not removed to federal court. A ruling or decision on the suggestion that Roark's addition as a party in a hypothetical state court action would amount to fraudulent joinder would amount to an impermissible advisory opinion.

was provided the insurer filed a declaratory action in federal court seeking a declaration of its rights and obligations under the policy. *Id.* The court viewed the filing of the declaratory judgment action in federal court near the end of the notice period as strategic and indicative of a race to the courthouse where the natural defendant sought to preempt the natural plaintiff's choice of forum. *See id.* at *5-6, *aff'd*, 490 F. App'x 721, 725-26 (6th Cir. 2012).

In this case, the fact that this declaratory action was filed on the same day that Nationwide sent correspondence to the Hattons stating that Nationwide believed that coverage was unavailable under the policy indicates that Nationwide made a strategic decision to race to the courthouse to seek a federal forum. Counsel for Nationwide sent a letter to counsel for the Hattons dated July 19, 2018, stating that Nationwide believed that coverage was unavailable under the policy due to material misrepresentations that were made on the insurance application. [DE 15-1 at 1-2, Pg ID 120-21]. The same day, Nationwide filed this declaratory judgment action in federal court. [DE 1]. Thus, it appears that Nationwide, the natural defendant in an insurance coverage dispute like this one, made a strategic decision to immediately file this declaratory action in federal court to avail itself of the federal forum and beat the Hattons, the natural plaintiffs, to the punch and preempt the Hattons' choice of forum.

Third, and finally, there is a legitimate concern about a race to res judicata in this matter. Nothing prevents the Hattons from filing a parallel action in state court. Such a filing, however, would create a classic race to judgment for the purpose of res judicata and would potentially result in inconsistent judgments between the federal and state courts.

As a result, the third factor weighs against the exercise of federal jurisdiction in this declaratory action. If the Hattons, the natural plaintiffs, had filed suit in state court naming Roark as a co-defendant, then removal would not be available due to a lack of complete diversity, suggesting that Nationwide filed this action for the purpose of procedural fencing. Additionally, while courts have been "reluctant to impute an improper motive . . . where there is no evidence of such in the record," *Scottsdale Ins. Co.*, 513 F.3d at 558, the fact that Nationwide filed this declaratory action in federal court on the same day that it sent the Hattons a letter indicating that Nationwide believed that it did not owe coverage under the policy suggests that Nationwide made a strategic decision to race to the courthouse to avail itself of a federal forum before the Hattons could file suit in state court. Finally, an identical action for declaratory relief may be filed in state court, creating a real possibility that a parallel state court action in this matter will result in a race to res judicata that may result in inconsistent judgments. In sum, the

third factor weighs against the exercise of jurisdiction in federal court.

**(c) Factor Four: Friction Between State and Federal Courts**

The Sixth Circuit has weighed three sub-factors when considering whether a declaratory judgment action will cause friction between state and federal courts: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position than the federal court to evaluate those factual issues; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Scottsdale Ins. Co.*, 513 F.3d at 560. Here, after weighing the three sub-factors, the fourth factor is neutral regarding the exercise of federal jurisdiction.

Admittedly, the first two factors are more applicable where parallel state court proceedings have been commenced, but to the extent they apply here, the first sub-factor weighs in favor of exercising federal jurisdiction and second sub-factor is neutral pertaining to the exercise of federal court jurisdiction. The Sixth Circuit has interpreted the first sub-factor to focus on "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* Usually, declaring the rights

and obligations of an insurance company under the terms of an insurance policy requires a close reading of the policy itself and the application of that policy to the facts based on settled principles of state law; but the issues here are slightly more complex. Whether a material misrepresentation was made during the insurance application process is the primary question, but it is not the only question that has been presented in this action. If a material misrepresentation was made, there is also the factual question of who is responsible for making the misrepresentation. As such, the application of agency law principles under Kentucky law will likely be necessary for an ultimate resolution in this matter to determine whether Nationwide shares any responsibility for any material misrepresentation made through its agent, the Roark Agency.

Additionally, there are other factual disputes in this action, in addition to the potential liability of Roark, that distinguish this case from others where federal courts have exercised jurisdiction. For instance, there is a dispute over the relevance of factual statements that were made by the Hattons during the EUOs and the extent to which these statements may be treated as evidence. [DE 19 at 1-2, Pg ID 482-83]. Furthermore, there are factual issues regarding the role of the Roark agency in procuring the insurance policy, including whether Roark discussed and reviewed the application with the Hattons. [*Id.* at 2-3, Pg ID

483-84]. There are factual questions pertaining to the relevance, if any, of questions contained in a related Agribusiness Insurance Application. [*Id.* at 3, Pg ID 484]. Finally, there are fact questions regarding certain terms that were included in the application and what misrepresentations were made, if any, in the application based on the meaning of these terms. [*Id.* at 4, Pg ID 485].

Ultimately, if this case continues in federal court, it is possible, perhaps even likely, that the Hattons will file a parallel action in state court raising issues identical to those raised here. A parallel action in the state court would require making factual findings that may conflict with the factual findings made in the federal court action. This type of race to judgment or potential for inconsistent judgments may increase friction between the federal and state courts and should be avoided if possible.

Still, the question under this sub-factor is not necessarily whether a judgment will conflict with the judgment in an underlying state court case, but rather, "whether the state court's resolution of the factual issues in the case is *necessary* for the district court's resolution of the declaratory judgment action." *Scottsdale Ins. Co.*, 513 F.3d at 560 (emphasis added). Here, while the state court may be in the best position to resolve this issue, it is not *necessary* that this matter be decided in state court.

Federal courts regularly apply state law to resolve insurance coverage disputes when sitting in diversity. Additionally, assuming that Roark is not an indispensable party and that subject matter jurisdiction is proper in this Court, neither party has alleged that this matter cannot be resolved in federal court.

On this issue, this case is similar to other cases where this Court has exercised federal jurisdiction in a declaratory action. Previously, this Court acknowledged that it "routinely exercises jurisdiction over Declaratory Judgment claims involving insurance coverage of state court tort claims." *State Farm Fire and Cas. Co. v. Wiseman*, No. 5:07-CV-60-JMH, 2007 WL 1075663, at *2 (E.D. Ky. Apr. 9, 2007) (citing *Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F. Supp. 2d 710 (E.D. Ky. 2006); *Progressive N. Ins. Co. v. Marsh*, No. 05-CV-517-JMH, 2006 WL 2734463 (E.D. Ky. Sept. 25, 2006); *Owners Ins. Co. v. Hearn*, No. 05-CV-513-JMH, 2006 WL 2873177 (E.D. Ky. Oct. 5, 2006)). In *Creech*, *Marsh*, and *Hearn*, when considering this sub-factor, the Court found that there were no factual issues that had to be resolved by a state court prior to resolve the insurance coverage disputes. *See Creech*, 431 F. Supp. 2d at 714-15; *Marsh*, 2006 WL 2734463, at *2; *Hearn*, 2006 WL 2873177, at *3. By contrast, in *Wiseman*, this Court declined to exercise federal jurisdiction in part because there were factual issues before the state court that had to be resolved before the federal case could be resolved. *Wiseman*, 2007 WL 1075663, at

*2-3. Here, this case is more like *Creech*, *Marsh*, and *Hearn* because, although factual issues exist that must be resolved, those issue may be resolved in federal court while applying Kentucky substantive law in diversity.

As a result, the first sub-factor weighs in favor of exercising federal jurisdiction in this matter because the factual issues that are relevant to the resolution of this matter may be resolved in federal court. Of course, there is a compelling argument that these factual issues are best resolved in state court as opposed to federal court (see the discussion below), but that isn't the relevant consideration for this sub-factor. Here, the federal court may resolve the factual issues raised without the necessity of resolution of any factual issues in state court.

The second sub-factor focuses on whether the state court or federal court is in a better position to resolve the issue. Insurance companies are regulated by the states and, as such, state courts are generally in a better position to resolve insurance coverage disputes. *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 790 (citing *Scottsdale*, 513 F.3d at 561). When a novel issue of state law is presented in a federal declaratory judgment action, the Sixth Circuit has acknowledged that the state court is in the best position to decide the issue. *Scottsdale*, 513 F.3d at 560.

Here, the issue of the effect of a material misrepresentation in an insurance application on coverage obligations is not a novel

issue under Kentucky state law. *See Tannenbaum*, 240 S.W.2d at 569. But resolution of this matter will also likely involve application of state agency law and consideration of the relevance and evidentiary value of the EUOs, which while perhaps not novel, complicate the legal analysis. Thus, on the one hand, this issue involves complex issues of state law that are not necessarily unsettled or novel and could be applied by the federal court in this matter. Still, this case involves more complex application of state law than simply whether a material misrepresentation was made on an application for insurance, which arguably places the state court in the *best* position to resolve the factual and legal issues in this matter. As a result, the second sub-factor could go either way and is neutral on whether the exercise of federal jurisdiction is appropriate.

Finally, the third sub-factor weighs against the exercise of federal jurisdiction in this matter because the issues presented here implicate important state policies. As the Sixth Circuit has recognized, "states are in a better position to resolve insurance disputes because they are more familiar with state law, they regulate the insurance companies for the benefit of their citizens, and are best situated to identify and enforce the policies underlying those regulations." *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 790 (citing *Scottsdale*, 513 F.3d at 561). Of course, federal courts are not unfit to resolve insurance coverage disputes.

Still, since this action exclusively involves state law, the third sub-factor weighs against the exercise of federal jurisdiction.

Here, the first sub-factor weighs in favor of exercising federal jurisdiction because there are no underlying factual issues that must necessarily be resolved in a state court. The second sub-factor is neutral because, while there are no novel legal issues arising under state law here, the legal issues are complex, and the state court is arguably in the best position to resolve those issues. Finally, the third sub-factor weighs against the exercise of federal court jurisdiction because insurance coverage disputes implicate important state law interests and resolution of this matter requires the exclusive application of substantive state law. In sum, balancing the sub-factors indicates that the fourth factor could go either way and is neutral on whether the federal court should exercise jurisdiction in this matter.

**(d) Factor Five: Availability of an Alternative Remedy**

While Nationwide was not required to wait on the Hattons to pursue their rights by filing a lawsuit or initiating a settlement action, Nationwide could have sought identical declaratory relief in state court pursuant to K.R.S. § 418.040. *See Davis v. Ky. Farm Bureau Ins. Co.*, 495 S.W. 3d 159 (Ky. Ct. App. 2016) (appeal from declaratory judgment action filed by insurance company for declaration of its rights and obligations under an insurance

policy). Nationwide defends its choice to file in federal court in the first instance by stating that "Nationwide filed this action to obtain a declaration of its rights and liabilities before proceeding with a course of conduct for which it might be held liable." [DE 18 at 19, Pg ID 143]. Additionally, Nationwide asserts that it should not have to wait on until the Hattons decide to bring suit. [Id.]. Fair enough, but that doesn't explain why this declaratory action was filed in federal court or argue that an alternative remedy is unavailable. The substantive rule of decision in this case will arise entirely under state law, an identical declaratory remedy is available to Nationwide under in state court, and there is no indication that filing this action in state court will have result in a delayed adjudication of Nationwide's rights.

The Sixth Circuit has also provided inconsistent advice on whether the state court remedy must be more effective than a federal declaratory action or simply provide an alternative remedy for the purposes of this factor. *See Scottsdale*, 513 F.3d at 562. Regardless, there is no indication that Nationwide will be prejudiced in any way by pursuing its rights in a declaratory action in state court or that a state court action will result in any delay for Nationwide to receive a declaration of its rights. Additionally, any action in state court will apply the same

substantive law that would be applied in the federal court diversity action.

Ultimately, state courts are more than capable of resolving insurance coverage issues, like the one in this case. In fact, state courts are in the best position to resolve disputes that arise solely under state law. As such, litigating this matter is state court is clearly an alternative remedy to litigating this matter in federal court.

**(e) Balancing the Factors**

Admittedly, the inconsistent application of the relevant factors by federal courts, paired with the splits of authority among panels of the Sixth Circuit on the proper application of the first, second, and fifth factors, make it difficult for litigants and the Court to determine whether federal jurisdiction should be exercised in a declaratory judgment action. It is particularly difficult in an admittedly close and complex case like this one. Still, at risk of sounding cliché, the Court must play the hand it was dealt and do its best to interpret the current state of the law. To that end, the Court must engage in a detailed and fact-intensive analysis and rely on the "unique and substantial" discretion granted to it by the Declaratory Judgment Act. *Scottsdale*, 513 F.3d at 563.

Here, as was previously discussed, most of the factors weigh against the exercise of federal court jurisdiction and in favor of

dismissal. While the second factor weighs in favor of federal jurisdiction because the Court may settle the discrete issue of insurance coverage between the parties, there is a real possibility that the Court will be unable to resolve the ultimate, underlying dispute regarding the culpability of the Roark Agency for any material misrepresentation made on the application, meaning the first factor weighs against federal jurisdiction. Litigating this matter in state court will allow the entire matter, including any counterclaims or crossclaims against the Roark Agency, to be resolved in one court, which will "promote[] efficiency, build[] trust in the legal system, and allow[] [the] parties to preserve resources." *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 791. Additionally, the third factor weighs against the exercise of federal jurisdiction because it appears that Nationwide's decision to file this declaratory action in state court on the same day that its attorney sent a letter to counsel for the Hattons informing them that they believed they were not obligated to provide coverage under the policy indicates that Nationwide made a strategic decision to race to the federal courthouse to file this declaratory action to preempt the Hattons' choice of forum. The fourth factor is neutral and could go either way. Finally, since the state court provides an alternate remedy through which Nationwide may seek a declaration of its rights under the policy, the fifth factor weighs against the exercise of jurisdiction. In

sum, three of the five factors weigh against the exercise of federal court jurisdiction in this matter.

Still, the Court need not simply count the factors mechanically and go with the majority because there are practical considerations that also support declining to exercise jurisdiction. This matter is a routine insurance coverage dispute that will be resolved under the substantive law of the State of Kentucky. Because subject matter jurisdiction exists, this matter may proceed in federal court. Still, the Hattons attempt to assert two counterclaims against the Roark Agency, a Kentucky agency.

If this action proceeds in federal court, it is possible that the Hattons will file a parallel action in state court that raises identical issues so that they may present their counterclaims against Roark in a single action. As a result, there is a very real possibility of a race to judgment between the two actions that may result in inconsistent judgments. Furthermore, even if a parallel state action is not filed, it is possible that resolution of the insurance coverage dispute in federal court will still leave open the question of the culpability of the Roark Agency for any material misrepresentation in the insurance application. This possibility for additional or parallel litigation is inefficient and will be costly for all parties involved.

Alternatively, the state court may decide every issue, including any counterclaims and crossclaims involving the Roark Agency, and there is no indication that litigating in state court will cause Nationwide any prejudice or result in a delayed declaration of Nationwide's rights. Finally, while federal courts routinely apply state law in diversity actions like this one, the state court is in a better position to interpret and apply state law to the facts in this matter. Thus, from the perspective of practicality and efficiency, the state court is the better forum for this insurance coverage dispute.

Moreover, the current absence of a parallel state court action, while relevant, is not dispositive. The Hattons are correct that numerous federal courts have declined to exercise jurisdiction in declaratory judgment actions when there was no parallel or underlying state court action filed. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) (holding that there is no requirement that a state action be pending before a federal court may decline to exercise jurisdiction over a declaratory judgment action); *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc); *Rinkenbach v. State Auto Ins. Co.*, No. 07-CV-870, 2007 WL 1314889, at *3 (E.D. Pa. May 4, 2007). Here, the fact that this action may be filed in state court, that this

matter involves no questions of federal law, and there there is no indication that the state forum is inadequate, counsels against the exercise of federal jurisdiction.

Finally, there is no indication that dismissal in this action will result in any significant prejudice to Nationwide or that dismissal will impair Nationwide from seeking declaratory relief. This case is currently in discovery. Any discovery that has been conducted in this matter up to this point will be relevant and useable in any state court action. Additionally, while Nationwide may be required to pay an additional filing fee to file in state court, Nationwide can seek the same relief and present identical issues in the state court forum.

In conclusion, the Sixth Circuit has cautioned that federal courts should not exercise jurisdiction over a declaratory judgment action "unless it serves a useful, practical purpose." *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Here, based on the unique facts and circumstances of this case, it is more efficient, useful, and practical for this matter to be resolved in state court where a final resolution may be reached between all the parties, including the Roark Agency.

## IV. Conclusion

Ultimately, while the Hattons failed to demonstrate that the Roark Agency is an indispensable party whose joinder would destroy

complete diversity of citizenship, they have effectively demonstrated that the relevant factors and considerations weigh against the exercise of jurisdiction over this declaratory action in federal court. As a result, based on the narrow facts and circumstances of this case, this matter is best resolved in state court. Accordingly, **IT IS ORDERED** as follows:

(1) The Hattons' Motion for Leave to Exceed Page Limitations [DE 20] in their consolidated or combined reply is **GRANTED**;

(2) The Hattons' Motion to Amend/Correct the Answer to Complaint and Counterclaim [DE 14] is **DENIED**;

(3) The Hattons' Motion to Dismiss [DE 15] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that the Hattons argue for discretionary dismissal of this declaratory judgment action but is **DENIED** to the extent that the Hattons claim that complete diversity is destroyed due to the mandatory joinder of the Roark Agency;

(4) The Court declines to exercise its jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**;

(5) All deadlines and hearings scheduled in this matter are **CONTINUED GENERALLY**;

(6) All other pending motions are **DENIED AS MOOT**; and

(7) This action is **STRICKEN** from the Court's active docket.

This the 11th day of January, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge